**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

RICHARD W. MCLAUGHLIN,

        Plaintiff,

                                    Case No. 3:13-cv-987-J-34MCR

v.

MEGAN J. BRENNAN, Postmaster
General U.S. Postal Service,[1]

        Defendant.

_____/

# O R D E R

    **THIS CAUSE** is before the Court on Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 31; Motion), filed on July 15, 2015.  Plaintiff Richard W. McLaughlin (McLaughlin), proceeding pro se, initiated this action on August 14, 2013.  See Complaint (Doc. 1).  On October 9, 2013, McLaughlin filed an Amended Complaint, see Amended Complaint (Doc. 9), and on February 10, 2014, having hired an attorney, McLaughlin filed a second Amended Complaint (Doc. 13; Second Amended Complaint).[2]  In the Second Amended Complaint, McLaughlin alleges that USPS violated Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000e et seq. (2012), by

_____

[1] Plaintiff Richard W. McLaughlin filed his Complaint on August 14, 2013 (Doc. 1), against Patrick R. Donahoe, in his official capacity as the Postmaster General.  On February 1, 2015, Megan J. Brennan succeeded Patrick Donahoe as the Postmaster General, and is therefore substituted as the proper Defendant in this action.  See Rule 25(d), Federal Rules of Civil Procedure.  In this Order, the Court will refer to Defendant as USPS.

[2] Although McLaughlin captioned this filing as "Amended Complaint and Jury Demand," (Doc. 13) the Court will refer to it as the Second Amended Complaint so as to avoid confusion with the Amended Complaint filed on October 9, 2013 (Doc. 9).

harassing McLaughlin, subjecting him to a hostile work environment, and discriminating against him on the basis of race (Count I), and retaliating against him for engaging in protected conduct (Count II). See generally Second Amended Complaint. Additionally, McLaughlin asserts that USPS intentionally caused him to suffer severe emotional distress (Count III). See id. at 5–6. In the Motion, USPS requests that the Court enter summary judgment in favor of USPS as to all of McLaughlin's claims pursuant to Rule 56, Federal Rules of Civil Procedure (Rule(s)). See Motion at 2. McLaughlin filed a response in opposition to the Motion on August 5, 2015. See Plaintiff Richard W. McLaughlin's Opposition to Defendant's Motion for Summary Judgment (Doc. 33; Response). Accordingly, this matter is ripe for review.

## I.  Background[3]

McLaughlin began working as an employee of USPS on a seasonal, part-time basis in 1998. Deposition of Richard W. McLaughlin, dated May 21, 2015, at 14, 17, 18 (Doc. 31-1; McLaughlin Dep). In 1999, USPS hired McLaughlin as a part-time flexible (PTF) mail clerk. Id. at 14, 17–19, 20. Five years later, in 2004, USPS moved McLaughlin to the position of PTF mail handler. Id. at 20–23. Then, in late 2005 or 2006, USPS hired McLaughlin as a full-time mail handler. Id. at 20–23, 24–25. Since that time, USPS has continued to employ McLaughlin as a full-time mail handler, and he remains in that positon to this day. Id. at 26. Since becoming a full-time employee, McLaughlin has not applied for any promotion, and USPS has not unilaterally promoted him. Id. at 36–40, 88, 132, 154, 167. USPS also has never disciplined, demoted, or terminated McLaughlin. Id. at

---

[3] For the purposes of resolving USPS's Motion, the Court views all disputed facts and reasonable inferences in the light most favorable to McLaughlin. The Court notes that these facts may differ from those ultimately proved at trial. See Lee v. Ferraro, 284 F.3d 1188, 1190 (11th Cir. 2002).

33–35, 88, 154, 163.  And, USPS has never decreased McLaughlin's regular rate of pay. Id. at 34–35, 88; see also Declaration of Richard W. McLaughlin, dated August 5, 2015, at 1 (Doc. 33-1; Declaration).  Notably, USPS has granted McLaughlin multiple pay increases over the course of his employment. McLaughlin Dep. at 34–35, 129–30.

While employed by USPS, McLaughlin has filed several complaints of discrimination with USPS.[4]  The instant action is premised on a complaint submitted by McLaughlin to USPS on June 13, 2013.  See EEO Complaint of Discrimination in the Postal Service, dated June 13, 2013 (Doc. 31-10; EEO Complaint).  In this EEO Complaint, McLaughlin alleges that he has been "repeatedly followed" and harassed by a "network of single white males," including USPS employee Dave Rubach (Rubach), "employees from the NDC," mall security guards, police working for the Jacksonville Sheriff's Office, and other "white men licensed to carry guns."  Id. at 2, 5–7.  McLaughlin also alleges "countless" other instances of harassment, such as vandalism of his car and other personal property and the theft of his possessions.  Id. at 5–7.  On July 24, 2013, the EEOC, construing the EEO Complaint as raising claims for race-based discrimination and retaliation, dismissed his complaint.  See generally Dismissal of Formal EEO Complaint, dated July 24, 2013 (Doc. 31-11; EEO Dismissal).  In doing so, the EEOC concluded that McLaughlin had failed to state a claim of severe or pervasive harassment.  Id. at 3–4.  Additionally, the EEOC found that McLaughlin's allegations regarding the vandalism of his car were identical to

---

[4] McLaughlin testified that he filed at least four complaints, in or around the years 2000, 2007, 2010 or 2011, and 2013.  McLaughlin Dep. at 41–46, 48, 54–55, 60–61. USPS's records reflect one informal complaint in 2007 and two formal complaints filed in 2010 and 2013. See USPS EEO Activity Search, dated September 18, 2013, at 1 (Doc. 31-8).  According to the Equal Employment Opportunity Commission ("EEOC"), the 2010 complaint was dismissed in 2011. See Dismissal of Formal EEO Complaint, dated July 24, 2013, at 5 (Doc. 31-11; EEO Dismissal).

allegations contained in his 2010 EEO Complaint, which the EEOC had already dismissed. Id. at 4–5.  The EEOC informed McLaughlin that he had the right to appeal the EEO Dismissal within thirty days from the date of its issuance or that, in lieu of appeal, he could file a civil action with the U.S. District Court within ninety days from that date.  Id. at 5–6. Thereafter, McLaughlin initiated the instant lawsuit.  See Complaint.

Although not pled in the Complaint, during a deposition in this case, McLaughlin testified that before filing the lawsuit, he regularly volunteered to work overtime and earned up to forty thousand dollars or more per year in overtime pay.  McLaughlin Dep. at 34–36, 119, 128–29, 130–31, 133.  However, in late 2013 or early 2014, McLaughlin decided to stop working overtime because of the harassment he was experiencing.  Id.

## II.    Standard of Review

Under Rule 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a).  The record to be considered on a motion for summary judgment may include "depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for the purposes of the motion only), admissions, interrogatory answers, or other materials."  Rule 56(c)(1)(A).[5]  An issue is

---

[5] Rule 56 was revised in 2010 "to improve the procedures for presenting and deciding summary-judgment motions."  Rule 56 Advisory Committee Note to 2010 Amendments.

The standard for granting summary judgment remains unchanged.  The language of subdivision (a) continues to require that there be no genuine dispute as to any material fact and that the movant be entitled to judgment as a matter of law.  The amendments will not affect continuing development of the decisional law construing and applying these phrases.

Id.  Thus, case law construing the former Rule 56 standard of review remains viable and is applicable here.

- 4 -

genuine when the evidence is such that a reasonable jury could return a verdict in favor of the nonmovant.  See Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996) (quoting Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 919 (11th Cir. 1993)).  "[A] mere scintilla of evidence in support of the non-moving party's position is insufficient to defeat a motion for summary judgment." Kesinger ex rel. Estate of Kesinger v. Herrington, 381 F.3d 1243, 1247 (11th Cir. 2004) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986)).

The party seeking summary judgment bears the initial burden of demonstrating to the court, by reference to the record, that there are no genuine issues of material fact to be determined at trial.  See Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991). "When a moving party has discharged its burden, the non-moving party must then go beyond the pleadings, and by its own affidavits, or by depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Jeffery v. Sarasota White Sox, Inc., 64 F.3d 590, 593–94 (11th Cir. 1995) (internal citations and quotation marks omitted).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248.  In determining whether summary judgment is appropriate, a court "must view all evidence and make all reasonable inferences in favor of the party opposing summary judgment." Haves v. City of Miami, 52 F.3d 918, 921 (11th Cir. 1995) (citing Dibrell Bros. Int'l, S.A. v. Banca Nazionale Del Lavoro, 38 F.3d 1571, 1578 (11th Cir. 1994)).  "Where the nonmoving party has failed to make a sufficient showing 'to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial,' there exist no genuine issues of material fact." <u>Mize</u>, 93 F.3d at 742 (quoting <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986)).[6]

## III.   Discussion

### A.   USPS's Failure to Caption the Motion as Dispositive

Before addressing the merits of the Motion, the Court must address McLaughlin's contention that because USPS failed to include the word "dispositive" in the Motion's caption, the Court should deny the Motion with prejudice.  Response at 3.  In support of this contention, McLaughlin cites Rule 56(a), Rule 3.01(h), Local Rules, United States District Court, Middle District of Florida (Local Rule(s)), <u>Whineglass v. Smith</u>, No. 8:11-cv-2784-T-23TGW, 2013 WL 2237841 (M.D. Fla. May 21, 2013), and <u>Dimieri v. Medici Pharm. Corp.</u>, No. 2:14-cv-176-SPC-DNF, 2015 U.S. Dist. LEXIS 62021 (M.D. Fla. May 12, 2015).

Rule 56(a) states:

> A party may move for summary judgment identifying each claim or defense— or the part of each claim or defense—on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. The court should state on the record the reasons for granting or denying the motion.

Despite citing Rule 56(a), McLaughlin fails to suggest how the Motion is deficient under that Rule.  Instead, he appears to rely solely on USPS's failure to caption the Motion as "dispositive" as required by Local Rule 3.01(h).  To the extent McLaughlin relies on <u>Whineglass</u> for the proposition that such failure warrants dismissal, it is inapposite.  Local

---

[6] Despite asserting that there are genuine issues of material fact, McLaughlin's counsel fails to include a single citation to the record in the Response.  <u>See generally</u> Response.  "[C]ourts may not consider the unsupported argument of counsel as evidence."  <u>U.S. ex rel. Crenshaw v. Degayner</u>, 622 F. Supp. 2d 1258, 1269 (M.D. Fla. 2008) (citing <u>U.S. v. Smith</u>, 918 F.2d 1551, 1562 (11th Cir. 1990)).  Nevertheless, the Court has independently reviewed the record and will not consider any factual arguments made by counsel for either party that the Court does not find to be supported by record evidence.

Rule 3.01(h) instructs in pertinent part: "All dispositive motions must be so designated in the caption of the motion."  In <u>Whineglass</u>, the defendants filed a motion for summary judgment and the plaintiffs, in their response to that motion, requested, "[a]s an aside," summary judgment in their favor.  <u>Whineglass</u>, 2013 WL 2237841, at *5 n.3 (alteration in original).  In doing so, the plaintiffs did not simply fail to include the word "dispositive" in the caption of the document, they failed to file a proper "motion" seeking entry of summary judgment altogether.  <u>Id.</u>  As such, the court denied plaintiffs' request for relief for failing to comply with both the Federal Rules and the Local Rules, which require a party seeking affirmative relief to file an appropriate motion and memorandum of law requesting that relief.  <u>See id.</u> (citing Rule 56(a) and Local Rule 3.01(h)).

McLaughlin also cites to the <u>Dimieri</u> decision as support for his position.  <u>See</u> Motion at 2 (citing <u>Dimieri</u>, 2015 U.S. Dist. LEXIS 62021, at *9–10).  There, the defendant filed a document titled: "Motion to Strike Plaintiff's Expert Report and Amended Motion for Summary Judgment and Incorporated Memorandum of Law."  <u>Dimieri</u>, 2015 U.S. Dist. LEXIS 62021, at *1–2.  The court denied the request for summary judgment, noting that both Rule 56(a) and Local Rule 3.01(h) "require summary judgment motions to be so designated to the Court and not lumped together with other motions."  <u>Id.</u> at *9 (citing <u>Whineglass</u>, 2013 WL 2237841, at *5 n.3).  It appears that McLaughlin reads <u>Dimieri</u> as standing for the draconian proposition that an otherwise properly filed motion seeking summary judgment that is titled as a motion for entry of summary judgment should be denied if it fails to additionally include the word "dispositive" in the caption.  This Court

declines to read the <u>Dimieri</u> decision in this fashion,[7] and would decline to follow it if it were intended to be so read.

The Motion before the Court here requests summary judgment and only summary judgment and is properly titled as seeking that relief.  <u>See</u> <u>generally</u> Motion.  Such a Motion is, of course, a dispositive motion.  Thus, to the extent McLaughlin requests that the Court deny, with prejudice, an otherwise properly filed motion for summary judgment based solely on its failure to include the word "dispositive" in the caption, the request is due to be denied.  Instead, the Court will turn to the parties' substantive arguments.

### B.    McLaughlin's Claims

McLaughlin asserts that, over the course of the thirteen years preceding the filing of this action, USPS subjected him to a racially hostile work environment, discriminated against him on the basis of race, retaliated against him, and caused him to suffer mental and emotional distress.  <u>See</u> <u>generally</u> Second Amended Complaint.  Unfortunately, he does not identify which facts he believes support his hostile work environment claim as opposed to those which relate to his discrimination or retaliation claims or his claim for mental and emotional distress.[8]  <u>See</u> <u>generally</u> <u>id.</u>, <u>Response</u>.  Nevertheless, viewing the record in the light most favorable to McLaughlin, it appears he may be relying on the following allegations to support all of his claims: (1) around 2000 or 2001, an unknown

---

[7]  The Court is of the view that the better reading of <u>Dimieri</u> is that the court found denial of summary judgment warranted due to the failure to file a separate, properly supported motion for summary judgment in accordance with the requirements of the Federal Rules and the Local Rules of this Court.  <u>See</u> <u>id.</u> (noting that the request for summary judgment should not have been "lumped together" with other motions).

[8]  Similarly, in the Response, McLaughlin fails to identify which actions he contends support each of his claims: harassment, discrimination, retaliation, and intentional infliction of severe emotional distress, or incidents he asserts to be independently sufficient to constitute an adverse action under Title VII, as opposed to those actions he maintains are adverse when considered cumulatively.  <u>See</u> <u>generally</u> Response.

individual placed a bolt in McLaughlin's breakfast food on USPS property, McLaughlin Dep. at 42–43, 136, 156;[9] (2) in 2005, an unknown individual stole McLaughlin's car keys while he was on USPS property, id. at 55–56; (3) in 2005, an unknown individual keyed McLaughlin's car while the car was parked on USPS property, id. at 56–57, 157; (4) in 2005, an orange USPS vehicle hit McLaughlin's car while the car was parked on USPS property, id. at 57, 140–142; (5) from 2005 to 2011, an unknown individual or individuals let air out of McLaughlin's tires and placed nails in his tires on more than twenty occasions while his car was parked on USPS property, id. at 57–58, 59;[10] (6) in 2010 or 2011, an unknown individual cut McLaughlin's cereal bowl while the bowl was stored on USPS property, id. at 45–48, 81, 138–40, 156; (7) in 2013, Rubach, a white male USPS employee, tailgated McLaughlin on the interstate "seven or eight times," id. at 62–64, 82, 91, 113–14, 160, 169–70; (8) in 2012, an unknown individual smashed the driver-side door of McLaughlin's car while the car was parked on USPS property, id. at 66, 79–80; (9) on one occasion an unknown individual threw gloves at McLaughlin on USPS property, id. at 78, 149, 156; (10) on one occasion a USPS employee kicked McLaughlin and, later that day, the same employee rammed a forklift into the forklift that McLaughlin was driving,[11] id. at

---

[9] In 2000 and 2001, USPS had not yet hired McLaughlin as a full-time employee. McLaughlin Dep. at 46. Moreover, McLaughlin testified that he filed a previous EEO complaint based on this event and even mediated the issue and settled it to his satisfaction. Id. Thus, it is unlikely that the Court could consider this incident as part of the alleged harassment. However, viewing the facts in the light most favorable to McLaughlin, the Court will consider it along with the other alleged incidents with regard to his hostile work environment claim.

[10] McLaughlin testified in his deposition that he filed a previous EEO complaint regarding his car tires in 2011 and that USPS investigated the claim and found that McLaughlin's car had not been vandalized. McLaughlin Dep. at 93–94. McLaughlin could not recall whether he appealed that decision, but also did not believe he had appealed any EEO decisions. Id. at 94–95.

[11] In his Declaration, McLaughlin states that "a USPS employee tried to run [him] over with a forklift," Declaration ¶ 12, and in the Response he argues that he "had a forklift driven into him," Response at 4.

124–26, 149, 167–68, 173–74; and (11) McLaughlin "was told by employees of USPS that there was no point in applying for promotions because [he] would not get them," Declaration at ¶¶ 6, 16.  Response at 4; Declaration at 2.

McLaughlin also points to other, more attenuated incidents as evidence to support his claims, including: (1) unknown individuals "targeted" McLaughlin in various public places and tailgated him "extensively"; (2) an unknown individual cut the water pipes to McLaughlin's house; (3) an unknown individual vandalized McLaughlin's mailbox; and (4) nails appeared in McLaughlin's wife's tires on numerous occasions.  See Response at 4, Declaration at 2; see also McLaughlin Dep. at 62, 65–66, 68–71, 75–78, 91, 101–05, 147–48, 159.  However, McLaughlin did not present even a scintilla of evidence to suggest that these actions were taken by, or at the behest of, USPS employees, that they were related in any way to his employment with USPS, or even that the alleged incidents took place on USPS grounds.  To the extent McLaughlin subjectively believes that USPS is somehow responsible for these incidents, his subjective belief alone does not create a genuine issue of fact.  See Ramsey v. Leath, 706 F.2d 1166, 1170 (11th Cir. 1983).  Thus, no reasonable jury could find USPS responsible for these acts, and the Court will not consider them as evidence of any of McLaughlin's claims.

### i.   Hostile Work Environment

A Title VII hostile work environment claim requires proof of a workplace "'permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

---

However, in his deposition, McLaughlin clarifies that a USPS employee driving a forklift "rammed" the forklift that McLaughlin was driving.  McLaughlin Dep. at 124, 125, 149, 168.

environment.'" <u>Miller v. Kenworth of Dothan, Inc.</u>, 277 F.3d 1269, 1275 (11th Cir. 2002) (quoting <u>Harris v. Forklift Sys., Inc.</u>, 510 U.S. 17, 21 (1993)).  Unlike discrete acts such as termination, refusal to transfer, or failure to promote, a hostile work environment claim by its nature involves repeated conduct and is "based on the cumulative effect of individual acts."  <u>McCann v. Tillman</u>, 526 F.3d 1370, 1378 (11th Cir. 2008) (quoting <u>Nat'l R.R. Passenger Corp. v. Morgan</u>, 536 U.S. 101, 115 (2002)).  To establish such a claim, a plaintiff must show

> "(1) that he belongs to a protected group; (2) that he has been subject to unwelcome harassment; (3) that the harassment must have been based on a protected characteristic of the employee . . . ; (4) that the harassment was sufficiently severe or pervasive to alter the terms and conditions of employment and create a discriminatorily abusive working environment; and (5) that the employer is responsible for such environment under either a theory of vicarious or of direct liability."

<u>Miller</u>, 277 F.3d at 1275.

In seeking entry of summary judgment, USPS asserts that the harassment McLaughlin alleges is not sufficiently severe or pervasive, that McLaughlin failed to introduce evidence tending to show that the conduct was based on his race, and that there is no basis for holding USPS liable for the conduct alleged.  Motion at 8–12.  McLaughlin does not specifically respond to these arguments in his memorandum of law.  <u>See generally</u> Response.

The determination of whether harassment is sufficiently severe or pervasive to alter the terms of an individual's employment involves both a subjective and an objective component.  <u>See Adams v. Austal, U.S.A., LLC</u>, 754 F.3d 1240, 1249 (11th Cir. 2014). The plaintiff "must 'subjectively perceive' the harassment [to be] sufficiently severe and pervasive to alter the terms or conditions of employment." <u>Id.</u> (quoting <u>Mendoza v. Borden,</u>

Inc., 195 F.3d 1238, 1246 (11th Cir. 1999)).   In addition, the Court must find that a reasonable person in plaintiff's position would find the work environment "hostile or abusive."   See id.   When evaluating the objective component of the hostile work environment analysis, the Court must consider: "(1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance."   Id. at 1250–51 (quoting Mendoza, 195 F.3d at 1246).   The Court views the conduct "in context, not as isolated acts, and determine[s] under the totality of the circumstances whether the harassing conduct is sufficiently severe or pervasive to alter the terms or conditions of the plaintiff's employment and create a hostile or abusive working environment."   Id. at 1250 (quoting Mendoza, 195 F.3d at 1246).   Notably, the Supreme Court has instructed that "simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment."   Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (internal citation and quotations omitted).

McLaughlin alleges that USPS employees have continuously harassed him throughout his entire seventeen-year employment with USPS.   Even if McLaughlin subjectively believes that the acts about which he complains were severe or pervasive enough to alter the terms or conditions of his employment, the Court finds that a reasonable person in McLaughlin's position would not have found these acts to be sufficiently severe or pervasive to do so.

The conduct at issue here consists of acts that were sporadic and isolated in nature, with the more serious incidents of property damage to McLaughlin's car occurring three

times over more than seven years.[12]   Moreover, Rubach's tailgating of McLaughlin occurred only seven to eight times and ceased in 2013.  See McLaughlin Dep. at 62–63, 113–14, 169–70; see also Alexander v. Opelika City Schs., 352 F. App'x 390, 393 (11th Cir. 2009) (finding that harassment was not frequent when a plaintiff "testified that he was called 'boy' constantly, but could only recall eight specific instances over the course of two years where he was called 'boy'"); see also Satchel v. Sch. Bd. of Hillsborough Cnty., 251 F. App'x 626, 630 (11th Cir. 2007) (finding that conduct was not severe or pervasive when "[t]he harassment [the employee] complained of consisted of specific, isolated incidents which occurred over a period of years at different schools").   Although McLaughlin's allegation regarding the forklift incident and the tailgating could be physically threatening, McLaughlin's description of the tailgating incidents indicates that they actually were nothing more than Rubach driving "real, real close."  See McLaughlin Dep. at 62–63.[13]  Moreover, the overwhelming majority of the incidents about which he complains were not physically threatening.  Instead, the majority of the incidents were limited to property damage or mere taunting.  Significantly, these incidents did not interfere with McLaughlin's job performance, as he has continued to work full time since 2005 or 2006 with no discipline, and the majority of the incidents occurred outside of working hours.[14]   While McLaughlin found these

---

[12] Indeed, the majority of instances of significant property damage occurred in 2005, some eight years before he filed his EEO Complaint.

[13] Although in the Response and Second Amended Complaint McLaughlin contends that Rubach "followed [McLaughlin] home [and] attempted to run him off the road, attempting to intimidate and harass [McLaughlin]," Second Amended Complaint at ¶ 16, and that McLaughlin was "terrorized on the freeway," Response at 4, in his deposition, McLaughlin testified that the tailgating was just Rubach driving "real, real close."  See McLaughlin Dep. at 62–63.  In responding to a motion for summary judgment, a party must point to evidence in the record, and cannot rest on allegations in his pleading.  Jeffery, 64 F.3d at 593–94.

[14] At most McLaughlin makes the conclusory statement that he was "never at peace" in his job. Declaration at ¶ 16.  Given the fact that McLaughlin continued to work his full schedule, without disciplinary action or other incident, and to make himself available to work overtime for more than a decade despite the

incidents subjectively humiliating, the Court declines to find that they were objectively humiliating.  McLaughlin introduced some evidence that USPS employees used racial slurs or derogatory remarks on occasion.  Id. at 72–73.   With regard to the racial slurs, McLaughlin admitted that "no one at the post office ever called [him] the N word," and no supervisor said that word in McLaughlin's presence, but rather he had only heard "rumors about supervisors saying . . . . we gotta keep them N down, them niggers down."  Id. at 72–73, 151, 166–67.[15]  Adams, 754 F.3d at 1254 (finding that a plaintiff failed to establish a disputed issue of fact concerning his work environment when the plaintiff frequently saw racist graffiti in restrooms, frequently saw the Confederate flag, and heard the slur "'nigger' . . . only a few times over several years, and . . . did not offer evidence that a supervisor used that word or that anyone directed it toward him"); see also Hall v. Dekalb Cnty. Gov't, 503 F. App'x 781, 785 (11th Cir. 2013) (a single incident "during which another employee called [the plaintiff] a 'boy,'" did not rise to the level of severity or pervasiveness necessary to establish a claim for Title VII hostile work environment).

---

alleged harassing conduct, his conclusory statement that he was "never at peace" constitutes no more than a scintilla of evidence and does not create a genuine issue of material fact as to any effect of the alleged harassment on the terms and conditions of his employment.

[15] In his Declaration, McLaughlin states that at some point in time USPS employees told him there was no point in applying for promotions because he would not get them.  Declaration at ¶¶ 6, 16.  McLaughlin points to no evidence as to when over the course of his employment the statement was made, who made it, how many times, or how the statement was in any way related to his race.  To the extent that McLaughlin is relying on this statement to support his hostile work environment claim, the Court finds, based upon his description of the statement, that McLaughlin has failed to demonstrate that it was made on account of his race.  See Miller, 277 F.3d at 1269; see also Satchel v. Sch. Bd. of Hillsborough Cnty., No. 8:05-cv-2239-T-24TBM, 2007 WL 570020, at *6 (M.D. Fla. Feb. 20, 2007) (noting, in granting summary judgment to the defendant on the plaintiff's hostile work environment claim, that the plaintiff failed to provide any evidence to demonstrate that the alleged harassment was based upon her race), aff'd, 251 F. App'x 626 (11th Cir. 2007).  Thus, these statements add nothing to McLaughlin's contention that he was subjected to an objectively hostile work environment based on his race.

Viewing all of this evidence together and in the light most favorable to McLaughlin, the Court finds that he has failed to create a genuine issue of material fact as to whether a reasonable person in his position over the course of the thirteen years since 2000 (when the first incident occurred) would have found the work environment he describes to be a hostile or abusive workplace.  See Mendoza, 195 F.3d at 1246.  Indeed, on this record, no reasonable person would find the conduct McLaughlin has described to have been sufficiently severe or pervasive to alter the terms or conditions of his employment at USPS. See id.; Davis v. City of Panama City, Fla., 510 F. Supp. 2d 671, 689–90 (N.D. Fla. 2007).

Even if McLaughlin created a genuine issue of fact as to whether he was subjected to severe and pervasive harassment, summary judgment would nevertheless be due to be granted to USPS.  To prevail on a hostile work environment claim, a plaintiff must ultimately show that any harassing conduct alleged is based upon a protected characteristic.  Title VII is not "a general civility code."  Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998).  Title VII "does not prohibit harassment alone, however severe and pervasive."  Baldwin v. Blue Cross/Blue Shield of Ala., 480 F.3d 1287, 1301 (11th Cir. 2007).  Rather, "Title VII prohibits discrimination, including harassment that discriminates on a protected category"—that is, race, color, religion, sex, or national origin.  Id. at 1301– 02; see also 42 U.S.C. § 2000e-2(a)(1).  Thus, to satisfy the requirement that harassment in a hostile work environment claim be "based on" a protected characteristic, a "plaintiff must show 'that similarly situated persons not of [the same protected class] were treated differently and better."  Baldwin, 480 F.3d at 1302 (quotation omitted).

Here, McLaughlin failed to introduce any evidence that the alleged harassment was based on his race.  McLaughlin states that he has "endured constant harassment from

employees of the USPS." Declaration at 1. However, the Declaration does not point to any evidence that such alleged harassment by USPS or its employees was based on a protected characteristic. <u>See</u> <u>generally</u> Declaration. After a thorough examination of the record, including McLaughlin's deposition, other than his subjective belief, the Court is unable to find evidence that the alleged harassment about which he complains was based on McLaughlin's race. McLaughlin repeatedly asserts that there is a "network" of individuals targeting him because of his race, and that "[i]f [he] was white, [he] wouldn't be going through this." <u>See</u> McLaughlin Dep. at 62, 87–88, 154–55, 91 ("I'm black, and I should stay in my place. That's the mentality. Q: Did anyone ever say that to you? A: I mean, they don't have to. I mean, that's the way I feel."). However, he points to no evidence supporting that subjective belief. <u>See</u> <u>Satchel</u>, 2007 WL 570020, at *6 (finding that a plaintiff's "gut feeling" that harassment was based on her race was "not sufficient to withstand a motion for summary judgment"). "In prosecuting [a hostile work environment] claim, the employee should present concrete evidence in the form of specific facts, not just conclusory allegations and assertions." <u>Laosebikan v. Coca-Cola Co.</u>, 167 F. App'x 758, 765 (11th Cir. 2006) (citing <u>Earley v. Champion Int'l Corp.</u>, 907 F.2d 1077, 1081 (11th Cir. 1990)). This, McLaughlin has not done.

When discussing the instances where Rubach tailgated him, McLaughlin admits that he never asked why Rubach was tailgating him. McLaughlin Dep. at 63–64. Save for the fact that Rubach is white and McLaughlin is black, McLaughlin points to no evidence that Rubach took any action against McLaughlin because of his race. As to the other individuals

McLaughlin claimed targeted or harassed him, McLaughlin does not know who they are,[16] and introduced no evidence demonstrating their race or of any racial bias on their part. Additionally, although McLaughlin argues that his car was damaged or vandalized multiple times, he introduced no evidence regarding who damaged his vehicle, that the person was motivated by McLaughlin's race, or that non-African American car owners did not experience similar incidents of damage to their vehicles. Thus, McLaughlin offers no more than his own speculation or belief to suggest that USPS or its employees took any action against him based on race. Such speculation is insufficient to create an issue of fact on this point. See Cordoba v. Dillard's, Inc., 419 F.3d 1169, 1181 (11th Cir. 2005) ("Speculation does not create a genuine issue of fact . . . .") (emphasis in original).[17] Thus, because McLaughlin has failed to point to evidence creating an issue of fact as to whether the work environment was sufficiently hostile or whether the harassment was due to his race, summary judgment is due to be granted to USPS on McLaughlin's hostile work environment claim.

### ii. Race Discrimination

Title VII provides "that it is unlawful for an employer 'to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin.'" Holifield v. Reno,

---

[16] McLaughlin did identify the person who kicked him and hit his forklift as Al Barrel, but he did not disclose what Mr. Barrel's race is, nor did he present any evidence suggesting the incident was racially motivated. McLaughlin Dep. at 125–26, 149–50, 167–69, 173–75.

[17] USPS also argues that McLaughlin has shown no basis upon which to hold USPS liable for any hostile work environment McLaughlin experienced. Motion at 12. As the Court has determined that McLaughlin failed to meet his burden of establishing a genuine issue of material fact as to whether the harassment was sufficiently severe or pervasive and that it was based on his race, the Court need not determine whether there is a basis for holding USPS liable for the alleged hostile work environment.

115 F.3d 1555, 1561 (11th Cir. 1997) (quoting 42 U.S.C. § 2000e-2(a)(1) (1988)).    In this action, in addition to his hostile work environment claim, McLaughlin also appears to allege a claim of discrimination premised on a theory of disparate treatment in that he alleges that USPS took a number of actions against him because of his race.  See Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807–08 (11th Cir. 2010).  A plaintiff may establish a Title VII discrimination claim through the introduction of direct or circumstantial evidence or statistical proof of discrimination.[18]  Lee v. U.S. Steel Corp., 450 F. App'x 834, 839 (11th Cir. 2012) (citing Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1264 (11th Cir. 2010)).  Where, as here, the plaintiff relies on circumstantial evidence of discrimination,[19] the Court applies the burden-shifting framework articulated in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  Alvarez, 610 F.3d at 1264.

---

[18] Title VII encompasses disparate treatment discrimination claims as well as disparate impact claims.  Armstrong v. Flowers Hosp., Inc., 33 F.3d 1308, 1312–13 (11th Cir. 1994).  McLaughlin has not alleged disparate impact discrimination, which involves facially neutral employment practices which have significant adverse effects on protected groups, the evidence of which usually focuses upon statistical disparities rather than specific incidents.  See Reeves v. C.H. Robinson Worldwide, Inc., 594 F.3d 798, 807–08 (11th Cir. 2010).  Here, McLaughlin's race discrimination claims are premised on disparate treatment; he contends that USPS supervisors and employees took a number of actions against him because of his race.  See Reeves, 594 F.3d at 807.

[19] McLaughlin does not argue that he has presented direct evidence of intentional discrimination.  A plaintiff may "present direct evidence of discriminatory intent in the form of actions or remarks of the employer reflecting a discriminatory attitude."  Hill v. Metro Atlanta Rapid Transit Auth., 841 F.2d 1533, 1539 (11th Cir. 1988), amended on reh'g on different grounds, 848 F.2d 1522 (11th Cir. 1988).  "Direct evidence is that which shows an employer's discriminatory intent 'without any inference or presumption."  Hinson v. Clinch Cnty., Ga. Bd. of Educ., 231 F.3d 821, 827 (11th Cir. 2000) (citation omitted).  However, "only the most blatant remarks, whose intent could be nothing other than to discriminate" will constitute direct evidence of discrimination.  Carter v. City of Miami, 870 F.2d 578, 582 (11th Cir. 1989).  In his deposition, McLaughlin stated that unidentified employees "normally say the N word two or three times a year" and that an unidentified supervisor once told another employee "we gotta keep them N down, them niggers down."  McLaughlin Dep. at 72, 73.  These comments do not constitute direct evidence of discrimination, as they are not alleged to have been made by a decisionmaker and are not alleged to have been related to any employment decision about McLaughlin.  See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998).

Under the <u>McDonnell Douglas</u> framework, the plaintiff bears the initial burden of establishing a <u>prima facie</u> case of discrimination.  A plaintiff establishes a <u>prima facie</u> case of discrimination under Title VII by showing: "(1) [he] is a member of the protected class; (2) [he] was subjected to adverse employment action; (3) [his] employer treated similarly situated [white] employees more favorably; and (4) [he] was qualified to do the job." <u>McCann</u>, 526 F.3d at 1373 (internal quotations omitted) (fourth alteration in original); <u>see also</u> <u>Holifield</u>, 115 F.3d at 1562.  If the plaintiff presents a <u>prima facie</u> case, that evidence "creates a presumption that the employer unlawfully discriminated against the employee," and the burden of production shifts to the defendant to offer a legitimate, non-discriminatory reason for the adverse employment action.  <u>Texas Dep't of Cmty. Affairs v. Burdine</u>, 450 U.S. 248, 254–56 (1981); <u>Alvarez</u>, 610 F.3d at 1264.  If the defendant meets this burden of production, the burden shifts back to the plaintiff to show that the stated reason is a mere pretext for unlawful discrimination and was not the "true reason for the employment decision." <u>Burdine</u>, 450 U.S. at 256; <u>Alvarez</u>, 610 F.3d at 1264; <u>Holifield</u>, 115 F.3d at 1565. A plaintiff may satisfy this burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence."  <u>Burdine</u>, 450 U.S. at 256. "Despite these shifts in the burden of production, the ultimate burden of persuasion remains on the plaintiff to show that the defendant intentionally discriminated against [him]." <u>Alvarez</u>, 610 F.3d at 1264.

McLaughlin's discrimination claim purportedly relies on the same set of facts and alleged incidents that support his hostile work environment claim.  <u>See</u> Second Amended Complaint ¶¶ 12–23.  It is undisputed that McLaughlin, an African-American, is a member

of a protected class.  Motion at 7.  Nevertheless, USPS argues that McLaughlin has not established a prima facie case of discrimination because he has failed to adduce any evidence that he suffered an adverse employment action or that USPS treated similarly situated employees outside McLaughlin's protected class more favorably than USPS treated McLaughlin.  Id. at 7–8.  McLaughlin does not specifically respond to these arguments in his memorandum of law.  See generally Response.  However, viewing the record and construing all inferences in favor of McLaughlin, he seems to argue that the alleged harassment itself, the fact that he no longer works overtime, and his failure to be promoted are adverse actions.  See id. at 4–5 (citing the decrease in McLaughlin's overtime pay and the incidents of harassment, alleging that he was "precluded from applying for promotions because of intimidation," and stating that USPS "has failed to meet its burden that there are no genuine issues of material fact as there remain issues of material fact as to discrimination . . . .").

"Not all conduct by an employer negatively affecting an employee constitutes adverse employment action."  Davis v. Town of Lake Park, Fla., 245 F.3d 1232, 1238 (11th Cir. 2001).  Rather, the Eleventh Circuit instructs that "to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a serious and material change in the terms, conditions, or privileges of employment."  Id. at 1239; see also Crawford v. Carroll, 529 F.3d 961, 974 n.14 (11th Cir. 2008) (noting that the broader "materially adverse" standard application in retaliation claims has no application to substantive Title VII discrimination claims).  While a plaintiff is not required to prove "direct economic consequences in all cases, the asserted impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment."  Davis, 245 F.3d at

1239.  "Moreover, the employee's subjective view of the significance and adversity of the employer's action is not controlling; the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  Id.; see also Holland v. Gee, 677 F.3d 1047, 1057 (11th Cir. 2012); Miller-Goodwin v. City of Panama City Beach, Fla., 385 F. App'x 966, 970 (11th Cir. 2010).  "Otherwise . . . every trivial personnel action that an irritable, chip-on-the-shoulder employee did not like would form the bases of a discrimination suit."  Doe v. DeKalb Cnty. Sch. Dist., 145 F.3d 1441, 1449 (11th Cir. 1998) (internal quotations omitted).

The Court has determined that the harassment about which McLaughlin complains did not affect the terms and conditions of employment.  As such, it does not constitute an adverse employment action.  Moreover, although McLaughlin argues that because of the harassment he stopped working overtime, "an employee's deliberate choice to alter his employment status does not constitute an adverse employment action."  Mattingly v. Univ. of S. Fla. Bd. of Trustees, 931 F. Supp. 2d 1176, 1188 (M.D. Fla. 2013); see also Santandreu v. Miami Dade Cnty., 513 F. App'x 902, 906 (11th Cir. 2013) (holding that a former employee's choice to voluntarily resign did not suffer an adverse employment action) (citing Hargray v. City of Hallandale, 57 F.3d 1560, 1568 (11th Cir. 1995) ("Resignations obtained in cases where an employee is faced with such unpleasant alternatives are nevertheless voluntary because the fact remains that plaintiff had a choice.") (emphasis in original)).  Thus, the fact that McLaughlin no longer opts to work overtime does not constitute an adverse employment action.[20]

_____

[20] To the extent McLaughlin wished to contend that his decision to stop working overtime was similar to a "constructive discharge," his claim would fail.  The Eleventh Circuit Court of Appeals has unequivocally held that the standard for establishing a "constructive discharge is higher than the standard for proving a

McLaughlin argues in his response that "he was precluded from applying for promotions because of intimidation and because a previous application had been approved but he was never notified," Response at 4;[21] see also Declaration at ¶¶ 6, 16, McLaughlin Dep. at 36–39.  Although USPS never promoted McLaughlin, the failure to do so does not constitute adverse action because McLaughlin never applied for a promotion after he became a full-time employee in 2005 or 2006.  Indeed, he does not identify any position for which he wished to apply or for which he believes he was qualified.  Thus, McLaughlin has failed to show that USPS's failure to promote him constitutes a discriminatory adverse employment action.

Notably, USPS never disciplined or demoted McLaughlin or decreased his regular pay or benefits.  Id. at 33, 34, 88–89, 154, 163; see also Declaration at 1 ("During my tenure with [USPS], I have never been disciplined.").  In fact, to this day McLaughlin is employed in the same position he has held since USPS hired him as a full-time employee in 2005 or 2006.  Id. at 25–26, 39–40.

Even if McLaughlin pointed to evidence sufficient to create an issue of fact as to whether USPS took an adverse employment action against him, McLaughlin fails to point to any evidence that shows a similarly situated individual outside of his protected class whom USPS treated more favorably.  The failure to produce a comparator is not

---

hostile work environment." Hipp v. Liberty Nat'l Life Ins. Co., 252 F.3d 1208, 1231 (11th Cir. 2001).  Here, McLaughlin has neither shown the existence of a hostile work environment nor that the conditions of working his overtime "were so unbearable that a reasonable person would" forego the employment.  See Bryant v. Jones, 575 F.3d 1281, 1298 (11th Cir. 2009).

[21] McLaughlin testified that he "tried to get in a supervisor position one time when [he] first came in . . . . [a]s a PTF clerk" in 1999.  McLaughlin Dep. at 36.  However, he made clear that "since [he became] a full-time employee with the post office," he has "never tried to be anything beyond a mail handler [his current job title]."  Id. at 36–40, 88, 167.

necessarily fatal to McLaughlin's discrimination claim—if he presents "a convincing mosaic of circumstantial evidence" of discrimination, summary judgment against him is improper. See Smith v. Lockheed-Martin Corp., 644 F.3d 1321, 1328 (11th Cir. 2011).  However, as with McLaughlin's hostile work environment claim, McLaughlin introduced no evidence that any action taken against him was based on his race.  Thus, McLaughlin failed to establish a prima facie case of discrimination.  On the record before the Court, no reasonable jury could find that McLaughlin suffered an adverse action, that USPS treated individuals outside of his protected class more favorably, or that any action USPS took against him was because of his race.  Summary judgment is therefore due to be granted to USPS on McLaughlin's race discrimination claim.

### iii.    Retaliation

Under Title VII, an employer is prohibited from retaliating against an employee "because he has opposed any practice made an unlawful employment practice . . . or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."  42 U.S.C. § 2000e-3(a).  "A prima facie case of retaliation under Title VII requires the plaintiff to show that: (1) [he] engaged in an activity protected under Title VII; (2) [he] suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action."  Crawford, 529 F.3d at 970.  While it is undisputed that McLaughlin engaged in protected activity by filing complaints with the EEOC, USPS asserts that McLaughlin failed to establish a prima facie case because he did not suffer an

adverse employment action.  See Motion at 6–7.[22]  In the Second Amended Complaint, McLaughlin seems to assert a claim for retaliatory harassment premised on the same conduct that he argues constitutes a hostile work environment.   Second Amended Complaint ¶¶ 12–17, 24.  Alternatively, in the Response, he suggests that his own decision to stop requesting overtime constitutes an adverse employment action.  See Response at 4–5.

McLaughlin alleges that USPS took several adverse employment actions against him, apparently he relies on the alleged acts of harassment already discussed, as well as causing him to stop working overtime.  Significantly, an "adverse employment action" for purposes of a retaliation claim encompasses a wider range of employer conduct than in the substantive discrimination context.  See Crawford, 529 F.3d at 973–74.  The Supreme Court has held that "the antiretaliation provision, unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 64 (2006); see also Crawford, 529 F.3d at 970, 973–74.  Thus, under Burlington, "the type of employer conduct considered actionable has been broadened from that which adversely affects the plaintiff's conditions of employment or employment status to that which has a materially adverse effect on the plaintiff, irrespective of whether it is employment or work-place related."  See Crawford, 529 F.3d at 973 (citing Burlington, 548 U.S. at 67–68).  A materially adverse action for purposes of a retaliation claim means an action that "well might have dissuaded a

---

[22] USPS does not address whether McLaughlin introduced evidence creating a genuine dispute of material fact as to causation.  See generally Motion at 6–7.

reasonable worker from making or supporting a charge of discrimination." Burlington, 548 U.S. at 68 (quotations omitted).

Turning first to the alleged acts of harassment by USPS employees, the Court concludes that the acts of these individuals do not amount to a materially adverse action. To constitute a materially adverse action, a reasonable employee standing in McLaughlin's shoes must have felt dissuaded from filing a complaint of discrimination. The Court finds that the actions alleged, if true, would not dissuade a reasonable employee from complaining about discrimination. In fact, it does not appear that McLaughlin himself was dissuaded, as he filed at least three complaints with the EEO office from 2007 to 2013. As previously discussed, the specific actions about which he complaints amount to the kind of trivial harms or minor annoyances that would not dissuade a reasonable employee from raising a complaint of discrimination. See id. Thus, McLaughlin has not shown that a reasonable jury could find that he experienced a materially adverse action based on the individual acts of harassment alleged to have been committed by USPS employees.[23]

Next, McLaughlin's choice to stop requesting overtime hours cannot be construed as an adverse action against him, even in light of the broader Burlington standard. McLaughlin voluntarily chose not to work overtime hours. McLaughlin Dep. at 34–36, 119, 128–31, 133. As previously discussed, USPS never terminated or disciplined McLaughlin or decreased his regular pay. McLaughlin Dep. at 33, 34, 88–89, 154, 163; see also Declaration at 1 ("During my tenure with [USPS], I have never been disciplined."). Because

---

[23] Notably, McLaughlin provides no evidence suggesting a causal connection between any alleged act of harassment and his protected activity or even that any person who participated in the alleged acts of harassment had any knowledge of his complaints of discrimination.

McLaughlin alone made the decision to stop working overtime, and USPS neither coerced him nor suggested this change, he fails to establish that he suffered a materially adverse employment action.  See Mattingly, 931 F. Supp. 2d at 1188, Santandreu, 513 F. App'x at 906; see also Lara v. Raytheon Tech. Serv. Co., LLC, 476 F. App'x 218, 222 (11th Cir. 2012), Turley v. SCI of Ala., 190 F. App'x 844, 846–47 (11th Cir. 2006).[24]  As such, he has failed to establish a prima facie case of retaliation in violation of Title VII.

McLaughlin may also be attempting to allege a claim based on retaliatory hostile work environment.  The Eleventh Circuit recognized a Title VII claim for retaliatory hostile work environment in the case Gowski v. Peake, 682 F.3d 1299, 1311–12 (11th Cir. 2012).  Notably, the standard for establishing a retaliatory hostile work environment claim does not apply the broader materially adverse test for discrete claims of retaliation.  Swindle v. Jefferson Cnty. Comm'n, 593 F. App'x 919, 928 (11th Cir. 2014) (quoting Gowski, 682 F.3d at 1311).  Instead, to state a prima facie claim for retaliatory harassment, a plaintiff must show that "the workplace [wa]s permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the [plaintiff's] employment or create an abusive working environment."  Id. (alterations in original).  As previously discussed, McLaughlin failed to show that the alleged harassing conduct was

_____

[24] McLaughlin testified that at the time of his deposition, in May of 2015, he had not worked overtime for "probably a year and a half."  McLaughlin Dep. at 35.  However, McLaughlin signed his EEO Complaint on June 13, 2013, and USPS received that complaint on June 17, 2013.  See EEO Complaint at 2.  McLaughlin initiated the instant litigation by filing his Complaint in August of 2013.  See Complaint (Doc. 1), at 1.  Thus, by McLaughlin's own estimation, he did not stop working overtime until months after filing the EEO Complaint and this lawsuit.  Additionally, he made no mention of the loss of overtime in his EEO Complaint, nor has he filed a new EEO charge or sought to amend any of the pleadings in this case to make any allegation regarding the loss of overtime.  It is therefore possible that McLaughlin has not exhausted his administrative remedies with regard to the alleged adverse action of the loss of overtime.  However, as the parties have not briefed this issue, and the Court finds that summary judgment is due to be entered against McLaughlin on other grounds, the Court will not address the exhaustion of administrative remedies.

severe or pervasive enough to alter the conditions of his employment; thus, he cannot show he experienced a retaliatory hostile work environment.  Because no reasonable jury could find that McLaughlin suffered either a materially adverse action or severe and pervasive retaliatory harassment, summary judgment is due to be granted to USPS on McLaughlin's retaliation claim.

### iv.   Mental and Emotional Distress

In Count III of the Second Amended Complaint, McLaughlin asserts that USPS "intentional[ly] . . . inflicted upon Plaintiff severe mental and emotional distress."  Second Amended Complaint ¶ 32.  In bringing this claim, McLaughlin relies on the same factual allegations that form the basis of his hostile work environment, discrimination, and retaliation claims.  In the Motion, USPS argues that "no separate cause of action exists in the context of Title VII for Plaintiff's claims for mental and emotional distress."  Motion at 12–13.  McLaughlin failed to respond to this argument, stating only that "there remain issues of material fact as to discrimination, retaliation, and hostile work environment." Response at 5.  While it is true that McLaughlin cannot assert a separate Title VII claim for "mental and emotional distress," the Court nevertheless construes Count III as raising a claim for intentional infliction of emotional distress pursuant to state law.  See Second Amended Complaint ¶ 32 ("Defendants' [sic] actions described herein were intentional and inflicted upon Plaintiff severe mental and emotional distress.").

Before reaching the merits of the state law claim in Count III, the Court notes it has determined that summary judgment is due to be granted to USPS on each of the federal claims in Counts I and II of the Second Amended Complaint, over which this Court has federal question jurisdiction.  Thus, the Court must consider whether to continue to exercise

supplemental jurisdiction over the state law claim for intentional infliction of emotional distress.  "The decision to exercise supplemental jurisdiction over pend[e]nt state claims rests within the discretion of the district court."  Raney v. Allstate Ins. Co., 370 F.3d 1086, 1088–89 (11th Cir. 2004).  Pursuant to 28 U.S.C. § 1376(c), the Court may decline to exercise jurisdiction over a state claim if:

> (1) the claim raises a novel or complex issue of State law;
> (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction;
> (3) the district court has dismissed all claims over which it has original jurisdiction; or
> (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).  Notably, "[a]ny one of the section 1367(c) factors is sufficient to give the district court discretion to dismiss a case's supplemental state law claims."  Parker v. Scrap Metal Processors, Inc., 468 F.3d 733, 743 (11th Cir. 2006).  However, upon determining that it has the discretion under § 1367(c) to decline jurisdiction, "[a district court] should consider the traditional rationales for pendent jurisdiction, including judicial economy and convenience in deciding whether or not to exercise that jurisdiction."  Palmer v. Hosp. Auth. of Randolph Cnty., 22 F.3d 1559, 1569 (11th Cir. 1994).  Upon due consideration, the Court finds that judicial economy and convenience would not be served by retaining jurisdiction over McLaughlin's state law claim.

The Court has determined that summary judgment is due to be granted to USPS on Counts I and II of the Second Amended Complaint.  What remains is a uniquely state law claim that is best addressed by the state courts.  When, as here, a plaintiff's federal claims are eliminated prior to trial, the Eleventh Circuit has "encouraged district courts to dismiss any remaining state claims."  Raney, 370 F.3d at 1089; see also Carnegie-Mellon Univ. v.

Cohill, 484 U.S. 343, 350 n.7 (1988) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims."); Murphy v. City of Aventura, 383 F. App'x 915, 917 (11th Cir. 2010) (affirming dismissal of state law claims following entry of summary judgment against plaintiff on the federal employment claims, and noting that the Eleventh Circuit encourages district courts to take such action). In the interests of judicial economy and convenience, the Court declines to exercise supplemental jurisdiction over Count III of the Second Amended Complaint.

Accordingly, it is hereby

**ORDERED:**

1. Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 31) is hereby **GRANTED** as to Counts I and II.

2. Defendant's Motion for Summary Judgment and Incorporated Memorandum of Law (Doc. 31) is **DENIED WITHOUT PREJUDICE** as to Count III of the Second Amended Complaint.

3. Pursuant to 28 U.S.C. § 1367(c)(3), Count III of the Second Amended Complaint is **DISMISSED WITHOUT PREJUDICE**.

4.   The Clerk of the Court is directed to enter judgment in accordance with this

Order, terminate all pending motions and deadlines as moot, and close the file.

**DONE AND ORDERED** in Jacksonville, Florida, this 31st day of March, 2016.

MARCIA MORALES HOWARD
United States District Judge

lc20

Copies to:
Counsel of Record